three to help us understand this case today. Mr. Kronzer, you get to go first. Yes, your honors, and may it please the court. My name is Corey Kronzer. I'm here on behalf of the petitioner, Jeff Yowell, in this case. And your honors, the issue before the court today is whether a railroad's rule that an employee must report an injury immediately, no matter how the injury is, is a violation of the Federal Rail Safety Act or the FERSA if the railroad chooses to enforce that rule by firing an employee merely for violating that only rule. Now, under the FERSA, it is a protected act that an employee cannot be fired in whole or in part to the employee reporting an on-the-job injury or, in the case following the treatment plan of employees, a medical doctor for treatment related to that on-the-job injury. And what we have here is Mr. Yowell was fired solely for the timing of when he engaged in protected activity. He was not fired for some misconduct unrelated to the very reason, other than he did not engage in protected activity when the railroad said he should have. Let me ask you this, Mr. Kronzer. Do you agree that if the railroad had learned of this without your client having acknowledged it and determined that he had been injured without him informing the railroad that they could have fired him for that under their requirements to make immediate reporting? That's a kind of a two-part questionnaire. I would say in this situation, the decision maker testified that this is hypothetical. If the railroad had learned of the injury without any reporting by your client and that he had gone a day, two days, five days without reporting his own injury, could they have fired him for failure to comply with their requirements? Technically, under their rule, technically under their rule, it says they can fire an employee for any discipline violation. That's what their discipline rule is. The Railroad Safety Act would not prevent that. Well, there would be a distinction between an employee who's fired for failing to report an injury and an employee who's fired for late reporting of an injury. Because the Railroad Safety Act very... Counsel, all I'm talking about is I'm trying to make clear that the only issue here comes from the combination of the late reporting and the fact that it's a reporting. So if you take that out of it, so we have this combination. How do we deal with causation, contributing factor, and all of that? But all I'm saying is if the reporting itself is taken out, it seems to me, and you correct me, that the railroad had every right to fire him, but not having ever reported an injury. I would say, well, in that case, then it wouldn't be a protected act. Because the railroad here, I understand your hypothetical, Your Honor, but the employee comes forward. And that's the stated purpose of the first amendments, the 2007 amendments, was to encourage employees to come forward with injuries, to be open and honest about it. And the department has released its own guidance on rules regarding time and manner reporting. And the department's own guidance on this said such rules cannot be unreasonable or unduly burden an employee's right and ability to report an on-the-job injury. And even their own guidance specifically says an employee cannot be fired, for example, for not reporting injury that they didn't realize was serious enough to report at the time or even realize that they were injured at all. And what you have here is a railroad that has a rule that says regardless of your injury, no matter how small, the decision maker even admitted a paper cut, if you do not report that you're going to have a time and manner rule, the rule can't be unreasonable, it can't be unduly burdensome, and it can't be enforced with unjustifiably harsh sanctions. And here you have a rule that regardless of the circumstances, regardless of the mechanism of injury, if an employee doesn't report even the smallest injury immediately, they will be fired, which basically creates a situation where an employee, if he realizes, hey, in this case, bumped my knee and it's gotten a little bit worse, if he doesn't come forward, arguably, it's hard to say what would be right after immediately, he'll be fired, which goes directly against the very purpose of the FERSA to encourage railroad safety through employees coming forward with on-the-job injuries. And this, Your Honors, arguably, we wouldn't be here if Mr. Gallo only received some sort of coaching event, which actually said discipline is actually included in the railroad's own discipline table that they have created, which, of course, they said they chose not to follow in this case, but under their own discipline table, which was created off the General Code of Operating Rules, which is a called the G-Core that certain railroads can choose to implement along with their own rules under this G-Core discipline table, which was created by the railroad. Mr. Gallo's violation was a level one violation resulting in a discipline that's a coaching event. And let me ask you, Mike. Oh, go ahead, Judge Southerland. Well, counsel was perhaps spending more time than I wish for you to do with my hypothetical. It seems to me that the real problem in this case, as all of you realize, is how do you allow a railroad to enforce its own disciplinary requirements and at the same time give effect to the contributing factor language that we have to deal with? I mean, it seemed that the one hand, the railroad makes a legitimate argument that you don't get to employee, at least as a problem, if an employee gets to protect himself from wrongful conduct so long as he self-reports in time before it's discovered otherwise. So help me understand how we can make this a legitimate exercise in protecting the interests both of the injured employee and of the railroad in having reporting. I think your view seems to be so long as he reports it before the railroad discovers it, he can't be disciplined for it. Well, yes, sir. I would say that the balance, the striking the balance between that would actually be going following OSHA's own guidance in this matter, which would be that the rule cannot be enforced with unjustifiably harsh sanctions. Arguably here, this rule is, there couldn't be a more unreasonable rule here with enforced with any more harsh sanctions than if you don't report an injury immediately, you'll be fired. This is not a case where, frankly, every other case that the first set cases dealt with other courts regarding late injury. You're arguing that that's an unreasonable rule, but that may not be an unreasonable rule from the point of view of the railroad, because any kind of, as in this case, what he thought was a minor injury and was not reported was one that turned out to be a rather serious injury in which he had to put a knee, had to put a brace on his knee and so on. And then they could not go out and examine the place where he said it occurred. So it impaired their ability to create a safe workplace, could be the argument that they would make. So it's not as it's not as draconian as you seem to indicate. There's a side on the other side as well. So yes, yes, your honor. And it's not our issue, is it with the rule that this injury has to be reported? I mean, we're getting off. We're really getting off the central issue in this case, really. Yes, it's the for one, the 2007 amendments to the FERSA were enacted specifically to prevent the very act that's happening here, where employees were suffering discipline for coming forward with on the job injuries. I mean, the problem in this case is, as Judge Southwick has indicated, is that the way the rule has been applied here and from the defendant's point of view is that the employee is hiding behind this protected concerted activity of this concerted activity defense to hide his wrong, his wrongdoing. And what I think Judge Southwick has indicated is the case is all about is how do you apply the rule so that the employee cannot use it as a shield to hide his wrongdoing? That's that's right. Right. And I would say there's a difference between misconduct revealed from investigating an on the job injury and rather than labeled misconduct based on how an employee reports an on the job injury. Again, it's it's not the problem with the rule. It's it just seems it's almost counterintuitive. I mean, the the the administrative law judge found he was that he was incredible, that he didn't believe what he was saying, that your man was obviously not acting in good faith, that your client was not acting in good faith. But yet, nevertheless, goes ahead and says he is protected by this rule. And that to me is counterintuitive. I mean, it's just hard to accept that kind of reasoning. And in fact, most of the circuits that have addressed this issue have rejected the arguments that you are essentially making in your briefs. You haven't made it yet, but that you have made in your briefs. And that is you if you don't address that particular issue, you're going to find yourself maybe losing. Yes, I say that our circuit knows all of these other rules and we're tied to previous to previous cases. But anyway, that's your honor. Mr. Yao was not fired for dishonesty or for making false statements, which was the case in all the other. For example, in Carter, the BNSF, he was fired for dishonesty. Nalon, he was for providing false reports. This is not a case where he was fired for being dishonest. He was fired solely for the timing of his injury report. And that's what's critical here. It's that the railroad has a hard he was fired for. I mean, the other viewpoint is he was fired for failing to report an injury. Well, and they determined that he did not report an injury by the virtue that he filed a late injury report. Well, I would say the term late here is subjected to the railroad's immediate time frame. Other railroads have more lax time frame requirements in which even a violation of those. We're dealing with this railroad and these facts in this room, aren't we? I mean, that's you know, you can't you can't in this appeal argue in the issue before us is I understand at least that the rule itself is unfair. That's not the issue. Right. Not in this case. The issue is time. Well, this isn't a case where an employee reports an injury. And for example, the railroad looks into it and they say, well, you didn't do your job right. Or you were, for example, stealing material. And that's what you were fired for. And that's what's critical here is looking at what was the reason it was just for late reporting that he was fired. And the issue is not with the rule of reporting an injury immediately. It's that we will fire you if you don't tell us immediately, compared with the very purpose of the first as amendments and what Congress was trying to do. I wanted to ask you just said it would be different if the employee engages in protected activity reports a safety violation. And then in the course of investigating that they found that he was stealing materials or maybe he was using drugs on the job. But wouldn't your cause that your theory of contributing factor is that if the protected activity is any part of the chain of events leading to the firing, then the railroad can't fire the person. So given your how would how would you apply it to a case where after the protected activity, the railroad discovers the person was stealing? Yes. And that and that is not I apologize. That's not the policy you're arguing here. A finding of that is you're arguing for the ARBs, the board's old test that was just whether it's intertwined with the protected activity or a chain of chain of events. What what I know you don't like the ARBs new test for contributing factors. So what what standard are you suggesting? Well, we're saying that the courts like this court, frankly, didn't have to look to the framework. A showing of contributing factor does not establish first a liability as showing contributing factor does not mean the railroad cannot discipline the employee. For example, an employee who's found to be stealing most certainly cannot hide behind a protected act. The thing is, is on the contributing factor phase is it would be a contributing factor. You'd say that the railroad would then have to show the affirmative defense to prevail in your theft hypothetical. Right. And it, frankly, would be extremely easy. And it doesn't. I thought you're reading. I thought you're reading of the affirmative defense is. Based on the plain language of the affirmative defense, if that would if the person wouldn't have been fired, but for filing the protected activity, which is the case, I mean, but for filing the protected activity, the railroad would have never known he stole on the job. So how does that? Yeah, and I just and this is the distinction of this case, and I understand how that comes off this way. In this case, he was fired because the manner to engage in protected activity. If he's fired because he was stealing material, the railroad then say, hey, we we fire people over material. It doesn't matter if you engage protected activity has no bearing on firing someone for stealing just because you show contributing factor doesn't mean first a expert. And it's that's the burden shifting framework. And what's other courts, for example, the Seventh Circuit has done is basically said that somehow contributing factor findings establishes first that first liability. That's not the case here. Why wasn't the board able in this case, even assuming there was a contributing factor of protected activity? Why wasn't the board on the affirmative defense able to say, OK, maybe it was because he engaged in protected activity. Maybe it was because he filed late. We think it was based on the facts were the fact finder. We think it's because he filed late. I realize I'm about five seconds. I can answer your question. Take take the time you need to respond to Judge Cosper's question. Yes. Yeah, frankly, I the board. The only rationale that was that was really provided was a citation to its Thorstenson decision. It didn't provide any sort of independent analysis. It all it said was that the railroad showed. In the board's opinion that they would have fired you out for late reporting absent, you know, engaging in protected activity and reporting injuries, engaging in protected activity. So that itself is confusing how the only sense providing is the railroad showed they would have fired y'all for late reporting in the absence of y'all reporting. They didn't provide any sort of independent analysis other than citation to a case which is just reversed by the Ninth Circuit. I wish I could provide more guidance on that, but they didn't. Other than citations, that's the only guidance that we have regarding the ARB's Mr. Silverman, what do you have to say? Good morning, Your Honors, and may it please the court. Bradley Silverman for the Department of Labor. The central question in this case is whether a railroad employee can effectively immunize self for consequences for his own workplace misconduct by reporting that misconduct to the carrier himself. There's no dispute in this report his workplace injury as Fort Worth safety policy required. He wasn't fired for reporting his injury. He was fired because he didn't report his injury, at least not when he was supposed to have reported it. His belated decision to report his injury late neither added to nor subtracted from his already completed misconduct. Mr. Gowell doesn't deny any of this. Instead, he argues that by reporting his injury late, he set in motion a chain of events that led the carrier to discover his misconduct and then to fire him for it. Mr. Silverman, let me mention this part of the briefing here as pointed out references out a chain of events can go back to the beginning of time as as far as contributing factors to some event, but this is a fairly limited chain and regardless of what seems reasonable, regardless of the interest of the railroad, etc., we have to apply the statute as it's written and make a reasonable interpretation, not a forced interpretation. You know the statute better than I do, but we do need to show that the protective activity was a contributing factor in the unfavorable action or deal with the same action defense and facts like this are always going to run up against a fairly clear, outside of the statutory meaning, fairly clear contributing factor was the reporting of whether it's a whistleblower or whether it's something else. What in your view is the best test that courts have used that would be to analyze this? Your honor, I think a particular case from another circuit that you think is the right way to deal with this? Yes, your honor. Three cases actually. Two circuit cases and one district court case. I would urge your honor to look at the Cain decision from the 10th circuit. In that case, the 10th circuit rejected the argument that the employee could point to just the bare chain of and being disciplined for that misconduct. But then the 10th circuit said that nonetheless, his case could go forward because he had shown more than that. Specifically, he had shown that he had been warned by his supervisors not to report the injury, not to make a protective report, and they hinted sort of darkly of unfavorable consequences for reporting. They also was used as a reason to discipline him had begun before the investigation of the accident, suggesting that his own report hadn't merely alerted them to his misconduct. So that decision, I think, strikes the correct balance between not allowing an employee to point to nothing more than that chain of events between reporting their own wrongdoing and being punished for that, while also allowing even such an employee to satisfy the statute and obtain liability and prevail if they have other evidence. And it's not an especially stringent test. It just prevents them from pointing to nothing more than reporting their misconduct and being disciplined. State that principle concisely that you say that we should draw from the 10th circuit case and apply to the these facts. Yes, Your Honor. Under the contributing factor standard, as a matter of proximate causation, an employee cannot point to solely the bare chain of events between reporting their own misconduct to their employer and being disciplined for that employer by that employer in order to show liability. They can pretty good. That's a pretty good gloss on the result. Does that what result in analysis occurs? And does that produce in this case? Yes, Your Honor. In this case, Mr. Gowell's argument essentially is that he was fired because he reported his injury late and that led Fort Worth to discover misconduct on his part and to discipline him for that. He does not point to any other evidence of retaliation. If he had other evidence, whether direct, indirect, you know, we're not we're not talking about the strength of that evidence points to nothing else. And the ALJ's fact findings, as affirmed by the ARB, make clear that he was fired solely for failing to report his injury on time. This is not. It's a good judge. You had something to say. He was he was asking. Another 10 second case, Lincoln. From two years ago, three now, the district court correctly focused on the decision makers, knowledge and motive. I'm a little hesitant that we have any statutory support to be looking at motive. Do you think that is a factor? Is that an evidentiary utility for evidence about motive on the power? Well, Your Honor, I think motive comes into play in in two ways. First, at the contributing factor stage, when it is clear and in this case, the factor of the the only solely for their failure to report timely, then the the report itself was not a factor in their decision in their decision making. Now, some circuits have discussed the need for retaliatory intent or motive or showing of actual retaliation. The ARB did not resolve this case on that ground. And so under the Chenery one doctrine that I believe that ground is not available for affirmance here. But I will note that at the same action defense stage, an employer's motive may have a certain relevance that it doesn't necessarily have at the contributing factor stage. And that's because of the same action defense stage. You're asking what the And so you're sort of necessarily there inquiring into the employer's motive on some level. Now, one reason why it's more appropriate to consider motive at the same action defense stage is because that gives the employee the benefit of the more favorable burden of proof at the same action defense stage. That's a burden that allows that falls on the employer rather than the employee and must be met with clear and convincing evidence. Mr. Silverman, as we've talked about, courts have interpreted contributing factor differently. Usually when there's an ambiguous statute, the government's arguing for deference. I found it notable in your brief. You didn't try to invoke deference. What is the government's position on deference? And if you're not seeking deference, I'm curious why that is, maybe because different agencies administer this, this statute. Your Honor, frankly, our thinking was that we don't need deference on this. We don't need Chevron deference. We don't need another form of deference. We think that the issue is fairly straightforward. You know, there's a there's a question. There's a question about whether deference would apply. And we thought, frankly, that making the arguments for why Chevron deference is available would be more necessary. You know, it might not be worth it just because we think that even reviewing de novo, the result is straightforward. So that's not to say that Chevron deference does not apply. We're just not relying on that here. Why would you said there might be there's a question about whether it would apply, though? Why? I mean, normally in a board's decisions like the NLRB or the BIA, those are entitled to deference. If the statute's ambiguous, why would there be a question here? Is it because two agencies administer the statute or? That's you know, that's that's that's one reason, Your Honor. Another is just the question of whether a statute is ambiguous is always a difficult question. You know, depending on the tools of statutory interpretation you use, sort of there's to a certain degree, ambiguities in the eye of the beholder. You know, we only have so many words to use in this brief. We don't want to waste your time. And we think we can win just on a de novo standard of review. So that that was our thinking. You may be worried that this circuit is not the biggest promoter of deference to regulatory agencies, perhaps. Oh, Your Honor, that never entered my mind at all. I assure you, I expect not. Anything else for you, Mr. Silverman? Not for me, Your Honor. I submit. All right. Thank you very much. You need to be unmuted. There you go. You may proceed. May I please the court? I am Rory Diven and I am the attorney for the Intervenor Fort Worth and Western Railroad Company. We're here today asking that the court affirm the ruling of the Administrative Review Board. This case comes to the court after there was a full trial below for an administrative law judge and witnesses were cross-examined and the ALJ issued extensive findings in a 68-page opinion, including that Fort Worth and Western fired Mr. Yowell solely, and I quote, solely because he violated company policy on timely and accurate reporting of injuries, that Yowell violated that policy, that Fort Worth and Western had no discriminatory animus, that Fort Worth and Western's intent was to enforce its legitimate policy, that its stated reason was not a pretext for unlawful retaliation, and also that there was no disparate treatment. In other words, he did not find that there was any evidence that the railroad treated Mr. Yowell differently from any similarly situated person, that Fort Worth and Western was not inconsistent in its application of policy, and that it, quote, presented ample evidence regarding the legitimacy of the decision to terminate. None of those fact findings have been challenged on appeal. We also note that Mr. Yowell himself, in writing two different places in his own handwritten statements, indicated one, this is on August 28, quote, my knee was injured about a week ago in Everman, and he goes on to say, I did not report my injury to any of my co-workers or supervisors, close quotes. A second statement in his own handwriting, which he wrote on the 28th, on the week of August 21st or 23rd, I injured my right knee in Everman. I did not report my injury to any of my co-workers or other authorities. So it's clear that in his mind, he knew he was injured and that he waited at least a week to report it. And as one of the judges correctly pointed out, after that injury, which he did not report, he had swelling in the limb and he also wrapped the limb. So it's something that he knew he violated the rule and he reported it late. Counsel, this is appropriate question for both of the respondents here, but I'm raising it with you. It seems to me, certainly part of the purpose and the Federal Railroad Safety Act statutorily says that notifying, attempting to notify the railroad carrier of a work-related injury is a protected activity. So you have this desire, this statutory mandate to allow people to report injuries. What the railroad has done here and what the ARB has upheld stifles that. If an employee for whatever reason is a little bit late, is a week late or whatever, and finally decides, maybe I'd better report this, he can be fired for it. It does seem to me that like the Ninth Circuit talking about inextricably intertwined or whatever the phrase is, is at least dealing with that. How can we deal with that under your concept? Is it just no protection of the whole, not the whole purpose, but this particular purpose of the Railroad Safety Act just goes by the boards if an employee is late in reporting and he can no longer report an injury without fear of termination? Well, Your Honor, the whole purpose of this statutory scheme is to promote safety. And how do we do that unless we have a rule which tells employees, you must report immediately. In other words, if you have the situation that there is some condition out there, an unsafe condition that caused an injury, and if you have no other witnesses, the only one who can bring that to the railroad's attention is that employee. Counsel, you have said the whole purpose is safety and I think you're half right. And that's the problem in this case that these different views are raising. The purpose seems to be to allow employees to report their injuries and to be safe. And those two interests are colliding in this particular case, perhaps in another and in others. I'm not sure there is a useful answer to that, but how do you deal with the fact that the statute also is trying to protect employees, allowing them to report their injuries and what this does in your view is prevents them reporting their injuries so long as they are a little bit late in doing and deciding to do it. And your honor, I would point out that section 201-01, it's 49 U.S.C. 201-01, it's the chapter within which the this statute is states, and I quote, the purpose of this chapter is to promote safety in every area of railroad operations and reduce railroad related accidents and incidents, close quotes. In other words, the overriding scheme is to promote safety and if employees follow the rules and timely report and accurately report, then we have safety promoted. We have the situation where a railroad can go out and investigate. And I understand the problem that your honor is acknowledging, which is what if somebody is, like in this case, a week late, I mean under our rule, especially where that week late has prevented an investigation, then there has to be a disciplinary result, which in this case was firing. The courts and the legislature have frowned on railroads trying to enforce the rule or promote its enforcement through a bonus scheme. I heard Mr. Kronza say, I thought that, you know, if the employee was unaware of the rule, that was an exception, of course, to reporting an injury in a timely fashion, that if he didn't know he was injured, he certainly didn't have to report it. And he said that was an exception to the prompt reporting of the, at the time the injury occurred. You obviously can if you don't know about it, I guess. And your honor, I would agree with that. If for some reason you didn't know, but the facts in this case, of course, are in his own handwriting twice, he stated, I was injured a week ago. So he obviously knew. And we know that coupled with the fact that he had pain, he testified that he wrapped it, that it was swelling, that in this case he did know. And we have the issue of how do you have that rule which promotes safety and have it be a meaningful rule if there cannot be a disciplinary result? And so five circuits have said no to allowing a chain of causation standard for the plaintiff to meet their initial burden. So we've got the second, the sixth, the seventh, the eighth, the tenth have all rejected that. And so, and one reason they've rejected it is that a mere chain of causation standard they've said just does not make sense. An example being if an employer allows a leave of absence, the next day the employee goes out of town, gets food poisoning at a seafood restaurant, one would find under a mere chain of causation standard that the employers granting the leave was the cause of the food poisoning. And again, that cannot be the law. And if that is the law, it basically creates almost a strict liability situation for the employer to try to enforce a late reporting rule. Second, I want to move on to the employer defense. And I understand that there was a concession here on the part of the railroad that if he had been two or three days late, uh, that, uh, that this, that this one would not have occurred. Is that a concession made at some point? No, your honor. I do not recall that. Honestly, I do not recall that. I mean, I think we'd be speaking hypothetically about what would or might've happened under those circumstances. I mean, I think, uh, Mr. Steinkamp, the manager of train operations was pretty adamant that he wanted this rule applied. He wanted the word out there to people that you need, even if it's a small injury, you need to come and immediately report it. That's what they testified to. Mr. Gibson, whose functional title was director of safety said, he told people, the employees, including Mr. Yowell in training, if you don't this rule, I will walk you off the yard. They're very, as far as this appeal is concerned, the merits, the demerits or the validity of that rule is not an issue here. Is that correct? I agree, your honor. That is not in the briefing, the validity of the rule. All right, Mr. Gibbons. We appreciate your assistance to us. Yes. Four minutes, I believe for rebuttal. Yes, your honor is in one to address, uh, first this, the cases that have dealt with that shut down the bear chain of events causation. One involves circuits that impose a contributing factor standard that is at odds with this course and also involves situations where an employee is trying to connect, uh, discipline for some sort of conduct that is for example, in the seventh circuits, cozy our case, the ploy was disciplined for stealing. And they said, you can't connect the bear chain of events. Well, understandably here, uh, as the ALJ properly found Mr. Yowell's report directly led to his firing for the timing of his report. And also, uh, through direct evidence, the ALJ found Mr. Steinkamp, uh, it was direct evidence that Mr. Stein can't testify. Had Mr. Yao not reported on August 29th, his prior week incident, he wouldn't have been fired because there wouldn't have been a violation. Now it's important to understand that under Mr. Yao's burden, the contributing factors, any factor alone or in combination with other factors tends to affect the anyway, the outcome of the decision here. It is hard to see how Mr. Yao's, uh, injury had already conceded that that was not the flat rule that, uh, if, if the fact that he had filed this complaint, uh, relating to an injury that indicated in that he had engaged in some kind of theft or, or, um, other misconduct in the course of investigating that failure to report that, uh, that, that the, uh, protected nature of the right to file an injury report would not protect him from that wrongdoing. Well, that, yes, sir. And the global scheme of a FERSA case, but when you're looking strictly at contributing factor standard one, I was making that point to show that in that case, the misconduct that the employees fired for is for stealing. And stealing material has nothing to do with engaging in protected activity. Here, Mr. Yao was fired for the timing of his engaging in protected activity. Yes, but, but, but for the, uh, but for the, uh, the, uh, filing of the complaint, the misconduct would not have been discovered. You are not arguing that it's a, but for, I think Judge Costa referred to it. You're not arguing that it's, uh, a, but for tests that protects him from any misconduct and any kind of misconduct that would have been discovered, but for his filing, a complaint is not protected. You know, if I understand your question, are you saying he can never be disciplined for discipline? And I'm not, we're not putting forth. If the, if the misconduct comes to light in the course of his filing, a protected complaint, can he be fired for that misconduct when the protected complaint was a contributing factor to the determination that he had engaged in misconduct? In such a circumstance, if the employer, the railroad can show that they would have imposed the same discipline absent the engaging in protected activity, that that's the statutory burden in the first case. And I would like to point out that, uh, one thing that the ARB was saying that if they could, if the railroad can show that they would have disciplined him for a late filing, notwithstanding the fact that that information came to their, um, to their knowledge in the course of this filing of the complaint, they can fire him for a timely, untimely filing. That's what you're saying. Is it not? No, I'm saying because that requires, they're not allowed to show that they would have fired an employee. They're required to show that they would have taken the same discipline absent the employee engaging in protected activity and reporting it on the job or injuries gauging and protected activity. And that's the whole thing here now. And one point out that the ARB failed to address the temporal proximity findings of the ALJ, which goes to the cane case. His misconduct was not found. That's his misconduct here. Time is up not to engage in further. Thank you, your honors. All right. Thanks to all three of you for your assistance on this case. We'll take it on our advisement and we are in recess.